**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **SONJA LANG,** | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | **6-20-CV-00653-ADA** |
| **TEXAS DEPARTMENT OF** | § | |
| **CRIMINAL JUSTICE,** | § | |
| *Defendant.* | § | |

## ORDER MOOTING DEFENDANT'S 12(b)(1) MOTION TO DISMISS AND DENYING DEFENDANT'S 12(b)(6) MOTION TO DISMISS

Before the Court is Plaintiff Sonja Lang's Complaint (Plaintiff's Complaint, ECF No. 1);

Plaintiff's First Amended Complaint (Plaintiff's First Amended Complaint, ECF No. 9);

Defendant Texas Department of Criminal Justice's Motion to Dismiss pursuant to Federal Rule

of Civil 12(b)(1) and 12(b)(6) (Defendant's Motion to Dismiss, ECF No. 8); and Plaintiff's

Response to Motion to Dismiss and Brief in Support (Plaintiff's Response, ECF No. 10). For the

reasons set forth below, the Court finds the Defendant's Motion to Dismiss under Federal Rule

of Civil Procedure 12(b)(1) is **MOOT** and Defendant's Motion to Dismiss under Federal Rule of

Civil Procedure 12(b)(6) should be **DENIED**.

### I. BACKGROUND

**A. Procedural Background**

Plaintiff filed a complaint against Defendant in this Court on July 20, 2020 alleging Title

VII employment discrimination, retaliation, and other claims. Pl.'s Comp. at 1. Defendant then

filed this Motion to Dismiss on August 13, 2020, alleging that this Court lacks subject matter

jurisdiction and Plaintiff failed to state a claim. Def.'s Mot. at 1. Plaintiff responded to

Defendant's Motion by filing a Response and Amended Complaint on August 27, 2020. Pl.'s

Resp. at 1; Pl.'s Amend. Compl. at 1.

**B. Factual Background**

Plaintiff Sonja Lang was an employee of the Defendant, Texas Department of Criminal Justice ("TDCJ"), from June 1, 1994 until on or about September 4, 2018. Pl.'s Amend. Compl. at 2, 11. At the time of the complained of discrimination, Plaintiff was working in the TDCJ's Marlin unit. *Id.* at 5. Throughout her employment with TDCJ, Plaintiff served in various roles, eventually rising to the rank of Lieutenant. *Id.* at 2–3. Plaintiff was promoted to Sergeant of Correctional Officers in February of 2012 and promoted to Lieutenant a year later. *Id.* at 3. Plaintiff also received an Associate in Arts from Houston Community College in May of 2014 that contained some criminal justice coursework. *Id.* On February 3, 2017, Plaintiff received a certificate for participating in a program aimed at promotable prospects within the TDCJ. *Id.*

As Lieutenant, Plaintiff's responsibilities included managing an entire unit's operations during her shift, maintaining the building schedule, and ensuring safety and professional standards. *Id.* at 3–4. In an annual performance evaluation from October 25, 2016 to October 25, 2017, Plaintiff received the highest score possible on all six essential functions of her position and all three supervisor functions. *Id.* at 4.

On June 6, 2017, Plaintiff applied for a "Captain of Correctional Officers" position. *Id.* Before applying, Plaintiff had discussed with Major Cordelia Miller that Plaintiff and two other Lieutenants, one black and one white, were likely the most qualified for the Captain position. *Id.* at 5. During this conversation, Major Miller said that the Warden, Warden Wright, could promote the white Lieutenant even though she was the least qualified of the three. *Id.* Kristi Colbert, the white Lieutenant, was then promoted to Captain. *Id.* On June 27, 2017, Plaintiff complained to Major Miller that she had been discriminated against because she was black. *Id.*

Major Miller had previously stated to Plaintiff that the Warden and other administrators had referred to the black women in the Marlin unit as "negans." *Id.* Additionally, when Plaintiff indicated that she wanted to file a complaint of discrimination, Major Miller discouraged her from doing so. *Id.* It was generally known at TDCJ that both Plaintiff and the other black Lieutenant that applied for the Captain position filed complaints, and both complaints were presented to the Warden because TDCJ policy required the Wared to present a statement about Colbert's selection for Captain. *Id.* at 6.

On July 5, 2017, eight days after Plaintiff made her discrimination complaint to Major Miller, Plaintiff was removed from being Lieutenant on duty and attended a staff meeting. *Id.* In the prior two years that Plaintiff worked in the Marlin Unit, this type of removal had never occurred and had not been TDCJ's standard practice. *Id.* At this meeting, Warden Wright discussed negative "morale" that had resulted from Colbert's promotion. *Id.* at 6–7. The Warden also stated that she had "the right to promote whoever she wants" and that the employees present could fill out a form being distributed if they did not want to be lieutenants anymore. *Id.* at 7. The employees present at the meeting received a list of job duties they needed to complete every day, which Plaintiff had not seen in her four years as a Lieutenant. *Id.* When the lieutenants began to express concern, the superior officers in the room got combative. *Id.* Plaintiff went to the Warden and asked to go home after the meeting, and the Warden replied, "[s]ure—you can't take it." *Id.* at 7–8.

Plaintiff's work situation changed after this point, and she was forced to work without appropriate staffing ratios, moved to a different unit's night shift, but was moved back and kept on the night shift when she pointed out that this move was in retaliation. *Id.* at 8. Plaintiff received a new set of individual job duties that other lieutenants on the same shift were not

required to do, including conducting four suicide drills a month, reviewing overtime submissions of other officers, changing timecards of officers, searching two offenders' cells daily, monitoring a painting job, among other responsibilities. *Id.* Furthermore, the Regional Director suggested that Plaintiff should transfer to a different unit when Plaintiff raised concerns about the new job changes. *Id.*

Plaintiff reported to various TDCJ representatives between June 27, 2017 and September 4, 2018 that she was discriminated against for the Captain role and retaliated against for complaining of that discrimination. *Id.* One Major said they would not be able to help Plaintiff if she claimed retaliation, and the Warden said all the administrators "are one." *Id.* at 9.

Plaintiff was disciplined by write-up on December 14, 2017 for "insubordination" and "misconduct" for not appearing at a shift she was supposed to fill for a co-worker when that co-worker returned to work at the given time. *Id.* at 10. The Warden placed Plaintiff on probation for three months after a hearing. *Id.* In July 2018, Plaintiff took a short leave under the Family and Medical Leave Act to treat depression exacerbated by the TDCJ's work environment. *Id.* During this leave, supervisors asked some of Plaintiff's co-workers to write statements about Plaintiff. *Id.* The second co-worker indicated that a supervisor had asked them to "write a negative statement." *Id.*

Finally, TDCJ investigated Plaintiff for using vulgar language while on duty and tampering with a witness, even though she was not aware there was even an ongoing investigation at the time. *Id.* at 11. On September 4, 2018, TDCJ gave Plaintiff the option to resign or be fired. *Id.*

Plaintiff submitted a complaint to the Texas Workforce Commission Civil Rights Division on or about March 1, 2019 detailing the events that occurred while working for TDCJ

and requested that the complaint be dual-filed with the Equal Employment Opportunity Commission (EEOC). *Id.* at 11. Plaintiff then signed the Charge of Discrimination that the Texas Workforce Commission Civil Rights Division prepared on May 7, 2019. *Id.* at 11–12. That Charge of Discrimination was investigated but not resolved at the administrative level, so Plaintiff was issued a right to sue letter on July 8, 2020. *Id.* at 12.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires that a court dismiss a claim if the court does not have subject matter jurisdiction over the dispute. Fed. R. Civ. P. 12(b)(1). In ruling upon a motion under Fed. R. Civ. P. 12(b)(1), a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992). The party which asserts jurisdiction bears the burden of proof for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009).

Motions under Rule 12(b)(1) fall into two different categories: a facial or a factual attack on jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *see* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1350 (4th ed.). A facial challenge, as Plaintiff has made here, challenges subject matter jurisdiction without disputing the facts alleged in the complaint and requires the court to treat the allegations of the complaint as true. *Id.* On the other hand, a factual challenge attacks the factual allegations underlying the

assertion of jurisdiction by presenting competing facts. *Id.* When such a challenge is made, there is no presumption of truthfulness attached to the plaintiff's allegations. *Id.*

**B. Federal Rule of Civil Procedure 12(b)(6)**

Upon motion or *sua sponte*, a court may dismiss an action that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the nonmovant. *In re Katrina Canal Breaches Litig.*, 495 F. 3d 191, 205 (5th Cir. 2007). However, a court need not blindly accept each and every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as a factual conclusion." *Taylor v. Books A Million, Inc.*, 296 F. 3d 376, 378 (5th Cir. 2002); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 56 U.S. 652, 678 (2009).

To survive the motion to dismiss, a nonmovant must plead enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. The court determines whether the plaintiff has stated both a legally cognizable and plausible claim; the court should not evaluate the plaintiff's likelihood of success. *Lone Star Fund V. (U.S.), LP v. Barclays Bank PLC*, 594 F. 3d 383, 387 (5th Cir. 2010). Based upon the assumption that all the allegations in the complaint are true, the factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

When the nonmovant pleads factual content that allows the court to reasonably infer that the movant is liable for the alleged misconduct, then the claim is plausible on its face. *Iqbal*, 556

U.S. at 678. The plausibility standard, unlike the "probability requirement," requires more than a sheer possibility that a defendant acted unlawfully. *Id.* The pleading standard announced in Rule 8(a)(2) does not require detailed factual allegations but demands greater specificity than an unadorned "the-defendant-unlawfully-harmed-me accusation." Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Nor does a complaint comply with the standard if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. Evaluating the plausibility of a claim is a context-specific process that requires a court to draw on its experience and common sense. *Iqbal*, 556 U.S. at 663–64.

## C. Title VII Retaliation: Hostile Work Environment

To establish a prima facie case of a hostile work environment, the Fifth Circuit requires that a plaintiff show: (1) she belongs to a protected group; (2) she was subjected to unwelcomed harassment; (3) the harassment complained of was based on a protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

When applied to actions taken by a Plaintiff, Plaintiff must show: (1) she engaged in protected activity; (2) she was subjected to unwelcomed harassment; (3) there is a causal connection between the harassment and protected activity; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Tejada v. Travis Ass'n for Blind*, No. A-12-CV-997-DAE, 2014 WL 2881450, at *3 (W.D. Tex. June 25, 2014), report and recommendation adopted sub nom. *Tejada v. Travis Ass'n for the Blind*, No.

1:12-CV-997-DAE, 2014 WL 4165370 (W.D. Tex. Aug. 7, 2014), aff'd, 617 F. App'x 325 (5th Cir. 2015).

**D. Title VII Retaliation: Termination**

To demonstrate a prima facie case of retaliation, a plaintiff must prove "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007). To show that retaliation was the "but-for" reason for termination, a plaintiff would have to show that the employer was aware of her involvement in the protected activity. *Medlock v. Ace Cash Exp., Inc.*, 589 F. App'x 707, 709 (5th Cir. 2014).

### III. ANALYSIS

**A. Plaintiff's Amended Complaint moots Defendant's Rule 12(b)(1) Motion to Dismiss.**

Defendant addresses Plaintiff's claims under Texas Labor Code Chapter 21, and Defendant claims Eleventh Amendment immunity as a defense. Def.'s Motion at 4. Defendant also claims Eleventh Amendment immunity as a defense to Plaintiff's federal disability discrimination claim under Title I of the Americans with Disabilities Acts of 1990 ("ADA") and ADA Amendments Act of 2008 ("ADAAA"). *Id.* at 4–5.

Plaintiff's First Amended Complaint no longer pleads the claims based on Texas Labor Code Chapter 21, ADA, or ADAAA. Pl.'s Amend. Compl. at 12–15. Because Plaintiff no longer alleges the causes of action Defendant targets with the 12(b)(1) Motion, this Court finds that the Motion to Dismiss is **MOOT** to the extent the Motion addresses the Texas Labor Code Chapter 21, ADA, and ADAAA claims.

**B. Plaintiff's Amended Complaint partially moots Defendant's 12(b)(6) Motion to Dismiss.**

Defendant argues that Plaintiff does not have standing to seek an injunction on behalf of other TDCJ employees preventing TDCJ from retaliating against employees who file discrimination complaints. Def.'s Mot. at 7–8.

Plaintiff removes any claims for relief for other TDCJ employees in her First Amended Complaint. Pl.'s Amend. Compl. at 15–16. Because Plaintiff no longer seeks injunctive relief for other TDCJ employees, Defendant's 12(b)(6) Motion is moot to the extent the Motion addresses that injunction.

Additionally, Defendant contends that Plaintiff does not clearly allege that she was terminated because of her race or sex because Plaintiff only listed claims of retaliation and disability discrimination as causes of action. Def.'s Mot. at 6. Defendant argues that Plaintiff fails to state her race in the Complaint and fails to establish that she was qualified for the Captain position. *Id.* at 7.

Plaintiff's First Amended Complaint clarifies that Plaintiff's causes of action are for retaliation for opposing and complaining of the discrimination, rather than the discrimination itself. Pl.'s Resp. at 2. Plaintiff's amended causes of action also arise out of retaliation for reporting the retaliation to the discrimination claim. *Id.* Because Plaintiff does not seek relief under a claim of race or sex discrimination, Defendant's 12(b)(6) Motion is **MOOT** to the extent that the Motion addresses the discrimination claim.

**C. Defendant's 12(b)(6) Motion to Dismiss fails because Plaintiff pleads facts to state a claim to relief that is plausible on its face.**

Defendant's chief argument in its Motion is that Plaintiff fails to state a claim for retaliation through a hostile work environment. Def.'s Mot. at 5–7. Plaintiff's Amended Complaint asserts a claim for retaliation through termination, but Defendant's Motion to Dismiss

does not address that claim because the Motion was filed prior to Plaintiff's Amended Complaint. Pl.'s Amend. Compl. at 14–15.

### i. Claim for Retaliation Through Hostile Work Environment

Defendant argues that Plaintiff has failed to state more than conclusory allegations for a hostile work environment claim based on retaliation. Def.'s Mot. at 5. Defendant states that Plaintiff must plead facts showing: (1) she engaged in protected activity; (2) she was subjected to unwelcomed harassment; (3) there is a causal connection between the harassment and protected activity; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Id.*

Chiefly, Defendant argues that Plaintiff fails to provide any context of harassment and does not allege exactly what the alleged harassment or verbal abuse was. *Id.* at 6. Furthermore, Defendant contends that Plaintiff fails to show a causal connection between the filing of EEO complaints and the alleged harassment. *Id.*

Plaintiff reiterates that she had only received favorable reviews in her 24-year career with the TDCJ and never received disciplinary action until she complained of discrimination in the promotion of a less qualified Caucasian candidate to Captain instead of Plaintiff. Pl.'s Resp. at 3–4. Plaintiff further states that the First Amended Complaint demonstrates she was subject to hostility to her discrimination complaint, less favorable work shifts, additional duties specific to her, mocking of her religion and medical condition, and disciplinary action, all beginning within days of her discrimination complaint. *Id.* at 4.

Plaintiff also states that the burden she must prove in retaliation cases is "much lower" than discrimination cases in light of the Supreme Court's decision in *Burlington N. & Santa Fe*

*Ry. Co. v. White*. Pl.'s Resp. at 4. In that case, the Court emphasized that what constitutes an adverse employment action depends on the circumstances. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006); Pl.'s Resp. at 4–5. Plaintiff points out that the Western District of Texas has recognized that the standard for adverse employment actions is lower for retaliation than discrimination claims. Pl.'s Resp. at 5. Plaintiff asserts that the standard for a materially adverse employment action is whether it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.* Alternatively, Plaintiff argues that even if Defendant's reliance on discrimination cases were correct, Plaintiff still meets the elements required by those cases. *Id.*

Overall, Plaintiff asserts her First Amended Complaint demonstrates that: (1) Plaintiff engaged in a protected activity by complaining of discrimination, (2) she was subject to harassment, (3) there was a causal connection between the harassment and protected activity, (4) the harassment affected a term, condition, or privilege of employment, and (5) TDCJ knew or should have known of the harassment and failed to take prompt remedial action. *Id.* at 5–6.

To survive a motion to dismiss, a nonmovant must plead enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. When the nonmovant pleads factual content that allows a court to reasonably infer that the movant is liable for the alleged misconduct, then the claim is plausible on its face. *Iqbal*, 556 U.S. at 678.

Based on the factors for a hostile work environment claim, Plaintiff must show: (1) she engaged in protected activity; (2) she was subjected to unwelcomed harassment; (3) there is a causal connection between the harassment and protected activity; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should

have known of the harassment in question and failed to take prompt remedial action. *Tejada*, No. A-12-CV-997-DAE, 2014 WL 2881450, at *3.

In the First Amended Complaint, Plaintiff describes her written employment discrimination complaint and the conversations surrounding it. Pl.'s Amend. Comp. at 5–6. Plaintiff initially discussed a possible complaint with a superior officer before filing the complaint days later. *Id.* at 5. A complaint is a protected activity under Title VII as part of making a "charge . . . in an investigation, proceeding, or hearing." Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3. Because Plaintiff clearly asserts that she "filed a written complaint of discrimination days later" after discussing doing so with a supervisor, the first element of the claim is at least plausibly supported by facts. Pl.'s Amend. Comp. at 5.

Plaintiff describes having to undergo additional new duties, unfavorable shift changes, mocking language, and additional disciplinary measures, among other things. *Id.* at 7–11. While Plaintiff also alleges that her superiors began mocking her religion and medical condition after her discrimination complaint, there are no additional facts in the Amended Complaint to support these allegations. *Id.* at 9. Despite this, Plaintiff's Amended Complaint fleshes out more facts addressing the harassment than were present in the original Complaint. Plaintiff clearly alleges that she was moved to a different, unfavorable shift in a different unit, given unique responsibilities no other person in her position was required to do, and superiors were soliciting negative statements about Plaintiff from co-workers. *Id.* at 8, 10. These facts plausibly support the harassment required for a retaliation claim, as the "significance of any given act of retaliation will often depend on the particular circumstances." *Burlington*, 548 U.S. at 69. Important in the inquiry is whether the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. In the present case, changing Plaintiff's shifts

and giving Plaintiff new, additional responsibilities could dissuade another reasonable worker from making a charge of discrimination.

Plaintiff states that the harassment and different treatment began occurring eight days after she made her discrimination complaint. Pl.'s Amend. Comp. at 6. Plaintiff states that this "timeline," along with the pledged lack of superiors' support if she filed another claim, indicate there was a causal connection between the harassment and the protected activity. Pl.'s Resp. at 5. Cases accepting temporal proximity between an employer's knowledge of the protected activity and an adverse employment action as sufficient evidence uniformly hold that the temporal proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). The Court in *Clark Cnty. Sch. Dist.* highlights cases that demonstrate events occurring three or four months apart does not constitute a "very close" temporal proximity. *See*, *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992). However, these cases delineate when the temporal proximity definitely fades, and events occurring prior to three or four months may still be "very close." Harassment beginning just over a week after filing a complaint is certainly close enough in time to be causally connected.

Additionally, the fact that a superior indicated filing a retaliation claim would result in the superior not being "able to help" Plaintiff indicates some connection between the superior's behavior and Plaintiff's protected actions. Pl.'s Amend. Comp. at 9. Because Plaintiff pleads facts indicating "very close" temporal proximity and superiors' behavior connecting the harassment to the complaints, a causal connection between the protected action and the harassment is plausible.

Plaintiff pleads facts indicating that her shifts changed, and she was assigned additional job duties. *Id.* at 8. The additional job duties were tasks that other employees in the same position were not required to do. *Id.* While these additional duties could indicate that Plaintiff's superiors trusted her alone with additional responsibility, taken in context with the surrounding circumstances, it is plausible that these changes were part of the alleged harassment. Changing the time an employee works or their responsibilities on the job goes to a term or condition of employment. Thus, it is plausible based on the facts that the harassment affected a term, condition, or privilege of Plaintiff's employment with TDCJ.

Finally, Plaintiff pleads that her supervisors knew or should have known of the harassment because she reported the harassment numerous times between June 27, 2018 and September 4, 2018. *Id.* at 9. Plaintiff also alleges that one superior did not keep employment complaints confidential, that it was generally known at TDCJ that Plaintiff and the other Black applicant for the Captain position complained of discrimination after Colbert's selection, and the Warden knew of Plaintiff's complaint. *Id.* at 5–6. These facts indicate that TDCJ had knowledge of the complaint and the person making it. *Id.* Additionally, Plaintiff pleads facts indicating that TDCJ failed to take prompt remedial action while having knowledge of the harassment. *Id.* at 8. After being moved to a different unit and shift after filing her initial discrimination complaint, Plaintiff was moved back to the old unit when she pointed out the move was retaliation for the discrimination complaint. *Id.* While moving Plaintiff back indicates some attempt to remedy the alleged retaliatory acts, Plaintiff alleges additional retaliatory acts that were not remedied.

By partially remedying the situation, TDCJ indicates that it had some knowledge of the harassment and took some steps to remedy it. However, Plaintiff complains of other examples of harassment that were not promptly remedied and pleads that the employer may have had

knowledge of the harassment. Because Plaintiff pleads facts demonstrating Defendant's knew or should have known of the harassment and did not make more than a single remedial action, the facts plausibly support this element of the claim.

Overall, Plaintiff pleads enough facts to state a claim for retaliation through a hostile work environment that is plausible on its face.

### ii. Claim for Retaliation Through Termination

To demonstrate a prima facie case of retaliation, a plaintiff must prove "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner*, 476 F.3d at 348. To show that retaliation was the "but-for" reason for termination, a plaintiff would have to show that the employer was aware of her involvement in the protected activity. *Medlock*, 589 F. App'x at 709.

As previously discussed, Plaintiff pleads facts that plausibly show she engaged in a protected activity. Pl.'s Amend. Comp. at 5. Additionally, Plaintiff pleads facts that demonstrate an adverse employment action, termination, occurred. *Id.* at 11. While the facts pled include the option to resign or be fired, either option results in Plaintiff no longer having her previous position. *Id.*

Finally, Plaintiff has pled facts that plausibly indicate a causal link between the protected activity and the adverse employment action because the employer was aware of Plaintiff's involvement in the protected activity. *Id.* at 5–6, 8.

Though Defendant does not expressly challenge Plaintiff's retaliation through termination claim in its Motion, Plaintiff pleads enough facts to state a claim that is plausible on its face.

## IV. CONCLUSION

**IT IS ORDERED** that Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) is **MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's First Amended Complaint pleads enough facts to state a claim to relief under Title VII for retaliation through a hostile work environment and retaliation through termination that is plausible on its face, and Defendant's Motion to Dismiss is **DENIED**.

SIGNED this 30th day of March, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE